NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NORTHEAST AUTO-MARINE TERMINAL,

Plaintiff,

v.

MARINE WAREHOUSEMAN AND GENERAL FACTORY WORKERS DIVISION OF LOCAL 1588 ILA AFL/CIO,

Defendant.

Civ. No. 08-2789 (AET)

**MEMORANDUM AND ORDER**

**THOMPSON, U.S.D.J.**

INTRODUCTION

This matter comes before the Court upon Plaintiff Northeast Auto-Marine Terminal's ("NEAT") Application for a Permanent Injunction [10][1]. The Court has decided this application based upon the submissions and oral arguments of the parties on June 6, 2008 and June 23, 2008. For the reasons stated below, Plaintiff's application is granted in part, and denied in part.

BACKGROUND

The Court incorporates the June 6, 2008 hearing on Plaintiff's Application for a Temporary Restraining Order, and the June 23, 2008 hearing on Plaintiff's Application for a Permanent Injunction.

[1] Defendant submitted an "Opposition to Plaintiff's Application for a Preliminary Injunction [8]." However, upon review of the entire Complaint, Plaintiff only seeks the injunctions currently before the Court. (Compl., 5.) Therefore, because the merits of this case are decided by the present Order, Plaintiff's Application shall be construed as an Application for a Permanent Injunction.

Plaintiff NEAT is engaged in the business of transporting and servicing automobiles and trucks for numerous manufacturers. NEAT is located at 403 Port New Jersey Boulevard, Jersey City, New Jersey (the "NEAT Terminal").

Defendant Marine Warehousemen and General Factory Workers Division of Local 1588 ILA AFL/CIO (the "Union") is a labor organization and association that represents all unionized employees who work at the NEAT Terminal in Jersey City.

NEAT and the Union have a Collective Bargaining Agreement ("CBA"). The CBA prohibits picketing of any kind. (Pl.'s Br., Ex. A., Article XV.) Additionally, NEAT and the Union are currently involved in "effects bargaining" over contractual benefits impacted by the planned facility closure of NEAT's Jersey City establishment. NEAT and the Union have met for bargaining sessions on five (5) dates: May 9, 2008, May 19, 2008, May 28, 2008, June 3, 2008, and June 17, 2008. (Rivera Cert. ¶ 4.)

On May 22, 2008, the Union and approximately eighty (80) of its members, commenced picketing at the NEAT Terminal in Jersey City, New Jersey. (Husak Cert., ¶ 3.) On May 29, 2008, Carl Biers, Executive Director of the Union, went to the home of Mr. and Mrs. David Husak, the President of NEAT, and their four children, located in Brick, New Jersey (the "Husak Residence"). Mr. Biers spoke with Mrs. Husak, and at some point, handed her a flyer which describes the details of the labor negotiations between NEAT and the Union. (Pl.'s Br., Ex. D.) Additionally, Mr. Biers told Ms. Husak that [the Union] was "planning to come down with a busload of members" to the Husak Residence on June 2, 2008, and that he was currently there "to hand out leaflets to her neighbors." (Pl.'s Br., Ex. E., ¶ 2.) However, Mr. Biers and the Union did not show up at the Husak Residence on June 2, 2008, nor anytime thereafter.

On June 4, 2008, Plaintiff filed a Complaint, and an Application for a Temporary Restraining Order ("TRO") with the Superior Court of New Jersey, Ocean County, seeking to enjoin Defendant from picketing at the NEAT Terminal and the Husak Residence. On June 5, 2008, Defendant removed the action to this Court. On June 6, 2008, the Court heard oral argument on Plaintiff's Application. In its June 6, 2008 Order, the Court granted Plaintiff's Application for a TRO with respect to the Husak Residence, and denied Plaintiff's Application for a TRO with respect to the NEAT Terminal. Also, the parties were to submit briefs by June 17, 2008 on Plaintiff's Application for a Permanent Injunction. On June 23, 2008, the Court heard oral argument on Plaintiff's Application for a Permanent Injunction.

## DISCUSSION

### A. Permanent Injunction Standard

The District Court must first consider whether issuance of an injunction is warranted under ordinary principles of equity. Specifically, a plaintiff seeking a permanent injunction must demonstrate: (1) that it has suffered irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006). Irreparable injury is shown if "a plaintiff demonstrates a significant risk that he . . . will experience significant harm that cannot adequately be compensated, after the fact, by monetary damages." Adams v. Freedom Forge Corp., 204 F.3d 475, 484 (3d Cir. 2000).

Case 3:08-cv-02917-JAP-TJB Document 7 Filed 07/09/2008 Page 4 of 8

B. Plaintiff's Application for a Permanent Injunction at the NEAT Terminal

Plaintiff argues that Defendant's actions violate the no-picketing clause of the collective bargaining agreement between the Union and the Company, and, therefore, the Court should grant Plaintiff's Application for a Permanent Injunction, enjoining Defendant from picketing at the NEAT Terminal.

Defendant argues, however, that a permanent injunction would violate the specific prohibition against such injunctive relief in the Norris-LaGuardia Act ("NLA"), 29 U.S.C. § 107. However, in Boy's Market, Inc. v. Retail Clerk's Union, Local, 398 U.S. 235 (1970), the Supreme Court carved out a narrow exception to the NLA prohibition against injunctive relief, and allowed the District Court to enjoin a strike, where the underlying dispute was subject to a binding arbitration provision in the collective bargaining agreement. Therefore, to be enjoinable under Boy's Market, an action must be "over a grievance which both parties are contractually bound to arbitrate." Id. at 254. Yet, in Jacksonville Bulk Terminals v. Longshoremen's Ass'n, 457 U.S. 702 (1982), the Supreme Court held that a Boy's Market exception does not apply, when the strike itself, is not over an arbitrable dispute, and, therefore, a strike may not be enjoined, pending an arbitrator's ruling on the legality of the strike under the collective-bargaining agreement. Id. at 722. Specifically, "a Boy's Market injunction pending arbitration should not issue unless the dispute underlying the work stoppage is arbitrable." Id. at 721.

Accordingly, Defendant claims that although the Supreme Court carved out a "narrow" exception to the NLA in its Boy's Market decision, Plaintiff has failed to allege a substantive violation of the parties' collective bargaining agreement, subject to mandatory arbitration, that would permit the court to consider the exception.

Plaintiff relies upon Defendant's alleged violation of the no-strike provision as a complete ground for issuance of an injunction, but has not shown the threshold requirements set forth in Boys Market, 398 U.S. at 254, for the Court to issue a permanent injunction that would enjoin Defendant from picketing at the NEAT terminal. Specifically, Plaintiff has not shown, neither during the June 23, 2008 hearing, nor in its supporting brief, that Defendant has caused, or will cause, irreparable harm, a necessity for the issuance of an injunction. Moreover, Plaintiff has not satisfied the requirements set forth in Jacksonville, 457 U.S. at 721, by showing that the strike itself, is over an arbitrable dispute. Therefore, Plaintiff's Application for a Permanent Injunction with respect to the NEAT Terminal must be denied.

C. Plaintiff's Application for a Permanent Injunction at the Husak Residence

Plaintiff seeks an injunction enjoining Defendant from picketing at the Husak Residence. Defendant argues that an injunction would infringe upon its constitutional rights, and prevent protected residential picketing.

Although courts have held "the dissemination of information concerning the facts of a labor dispute must be regarded as within the area of free discussion that is guaranteed by the Constitution," the United States Supreme Court has been careful to preserve for the states the power and the duty to protect the lives and property of its residents. Thornhill v. Alabama, 310 U.S. 88, 102 (1940). In Frisby v. Schultz, 487 U.S. 474 (1988), the Supreme Court stated:

> The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society." Our prior decisions have often remarked on the unique nature of the home, "the last citadel of the tired, the weary, and the sick," and have recognized that "[p]reserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of

their daily pursuits, is surely an important value."

> One important aspect of residential privacy is protection of the unwilling listener. Although in many locations, we expect individuals simply to avoid speech they do not want to hear, the home is different. "That we are often 'captives' outside the sanctuary of the home and subject to objectionable speech . . . does not mean we must be captives everywhere." Instead, a special benefit of the privacy all citizens enjoy within their own walls, which the State may legislate to protect, is an ability to avoid intrusions. Thus, we have repeatedly held that individuals are not required to welcome unwanted speech into their own homes and that the government may protect this freedom. In all such cases, we have been careful to acknowledge that unwilling listeners may be protected when within their own homes.

Id. at 484-485 (internal citations omitted)[2].

Plaintiff argues that Defendant's actions and threats of picketing at the Husak Residence are unnecessarily intrusive into the legally protected privacy of the Husak family. The Court agrees. In K-T Marine v. Dockbuilders Local Union 1456, 251 N.J. Super. 153 (Ch. Div. 1990), aff'd K-T Marine v. Dockbuilders Local Union 1456, 251 N.J. Super. 107, 112 (App. Div. 1991), the court determined that even if "there is a labor dispute involved - it will not justify picketing at the home." K-T Marine, 251 N.J. Super. at 158. Specifically, the Court stated that a union may not conduct picketing in a residential area far removed from the job site and in front of the home of a principal of the target corporation. Id. Here, the Husak Residence is located more than sixty (60) miles away from the NEAT Terminal, and the picketing seeks only to add

[2] While the constitutionality of a statue was at issue in Frisby, the principle of that case is consistent with New Jersey law. In Murray v. Lawson, 138 N.J. 206, 226 (1994), the New Jersey Supreme Court found the issuance of an injunction to be constitutional based on the "residential-privacy" test set forth in Frisby, and held that "targeted residential picketing can make residents captive listeners within their homes, and, therefore, 'protection of the unwilling listener' is an important component of residential privacy."

pressure to Mr. Husak's decision-making, pressure stemming from the apprehensions of his wife and children, and harassment to his family and neighbors. Accordingly, Plaintiff's Application for a Permanent Injunction with respect to the Husak Residence is granted.

## CONCLUSION

For the foregoing reasons, and for good cause shown,

IT IS on this 8th day of July, 2008,

ORDERED that Plaintiff's Application for a Permanent Injunction [10] is GRANTED in part, and DENIED in part; and it is further

ORDERED that Plaintiff's Application for a Permanent Injunction is GRANTED with respect to the Husak Residence; and it is further

ORDERED that Plaintiff's Application for a Permanent Injunction is DENIED with respect to the NEAT Terminal; and it is further

ORDERED that, until further order of the Court, the Defendant and its officers, agents, representatives, and servants, and all persons and organizations associated with or acting in concert or combination with them, be enjoined and restrained as follows:

(A) From gathering, parading or patrolling, loitering or picketing about or around Plaintiff's location known as the Husak Residence, located at 627 Point Avenue, Brick, New Jersey 08724;

(B) From assisting aiding or abetting in any manner whatsoever any person who violates or seeks to violate subdivision (A) of this Order; and it is further

ORDERED that a copy of this Order and a copy of the Complaint and supporting documents shall be served upon the Defendant within three (3) days, said service being

authorized to be made by the attorneys for NEAT or their agents upon Defendant and/or their legal representatives by personal service; and it is further

ORDERED that Plaintiff have leave to serve additional copies of this Order, which need not be certified, upon the Defendant and upon any persons acting in concert or combination with Defendant; and it is further

ORDERED that this case is closed.

                                                  s/ Anne E. Thompson
                                          ANNE E. THOMPSON, U.S.D.J.